**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DAVID GEORGE MACLEAN,

Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

Defendants.

Case No.: 1:25-cv-12319

Judge Jorge L. Alonso

Magistrate Judge Albert Berry, III

**PLAINTIFF'S OPPOSITION TO DEFENDANT BJ'S CHOICE'S MOTION TO SET ASIDE DEFAULT JUDGMENT [30]**

Defendant No. 25 BJ's Choice ("Defendant" or "BJ's Choice") moves under Rules 55(c) and 60(b)(4) to set aside the Final Default Judgment entered against it on December 3, 2025 [28], and to claw back funds already disbursed to Plaintiff (the "Motion"). The Motion consists of five pages of argument only. It has no declaration from BJ's Choice or its principal, no business-license excerpt, no registry extract, no contemporaneous capture of the storefront it describes, and no account of when BJ's Choice learned of this lawsuit or of the release of frozen funds from its Amazon Payments, Inc. ("Amazon") account to Plaintiff. On the two questions the Motion presents — whether it was filed within a reasonable time, and whether the judgment is void — BJ's Choice has put no evidence before the Court.

A Rule 60(b)(4) motion does not prove itself. The movant bears the burden on the reasonable-time question under Rule 60(c)(1) and *Coney Island Auto Parts Unlimited, Inc. v. Burton*, 607 U.S. 155, 157 (2026), and the burden of demonstrating the asserted jurisdictional defect under *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir. 1986). Counsel's

assertions in a brief are not evidence of either. The Court can deny the Motion on the burden alone, without crediting anything in Plaintiff's opposition and without resolving any disputed fact.

The record, in any event, runs against the Motion. BJ's Choice was not a defendant who learned of this case too late to act. Its present counsel, Wenzhu ("Wency") Yu of AnJie Broad Law Firm, replied directly to Plaintiff's service email on October 24, 2025 — the day after service — stating that AnJie Broad Law Firm had "just been retained to represent our client in this matter," and followed with a fuller disclosure on November 12, 2025, confirming Defendant's Amazon Seller ID, identifying its company, address, supplier, and sales figures, and conveying a settlement offer. The same Wenzhu Yu entered her docket appearance and signed the present motion on June 18, 2026. [29]; [30]. Defendant was counseled and engaged before judgment; it elected to remain in default while it negotiated; and it waited more than seven months after its documented notice, and until after the Seventh Circuit decided *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, 177 F.4th 793 (7th Cir. 2026), to ask this Court for relief.

Defendant's Motion is also contradicted by the record before the Court. Defendant's Motion represents without authentication that its "complete physical address" was "prominently and publicly displayed" on its Amazon storefront and "officially registered with government authorities and is easily verifiable." [30] at 2–3. The storefront record supplied a run-together Chinese pinyin string that returns nothing in the PRC business registries, paired with an address in Chinese characters and no business license, no Unified Social Credit Code, and no government-source verification. It is further contradicted by the name and address provided by Defendant's own counsel in writing to Plaintiff. Defendant has also ignored this Court's own order ([16] ¶ 2) directing it to file its true name and physical address under oath within fourteen days.

The relief Defendant demands exceeds what the Seventh Circuit ordered in *Kangol*. There, the Seventh Circuit reversed and remanded for the district court to decide whether the Hague Convention applied; it did not vacate, and it expressly declined to reach whether the defendant could recover funds already transferred. Defendant asks this Court to vacate and to order the return of funds in a single stroke — more than *Kangol* sanctioned on a materially identical posture.

Plaintiff therefore respectfully requests that the Court deny the Motion on the burden ground; or, in the alternative, defer ruling and authorize the limited discovery described in Part I.E, because the facts Defendant has withheld are uniquely within its possession.

## PROCEDURAL BACKGROUND

Plaintiff filed this copyright action on October 8, 2025. [1]. On October 10, 2025, Plaintiff moved *ex parte* for leave to conduct expedited third-party discovery and to serve process by email and electronic publication under Federal Rule of Civil Procedure 4(f)(3). [12]–[13]. The Court granted that motion by minute entry on October 15, 2025 [15] and entered its Order for Leave to Conduct Expedited Discovery and Service of Process by E-Mail and/or Electronic Publication the same day. See [16]. The Court's Order [16] authorized service by electronic publication and by email to the addresses the third-party marketplaces identified for each defendant. [16] ¶ 3.

Entering final judgment, the Court found that same combination of electronic publication and email to be "notice reasonably calculated under all circumstances to apprise Defaulting Defendants of the pendency of the action and affording them the opportunity to answer and present their objections" [28] at 1. And it ordered each defendant, "within fourteen (14) calendar days after receiving notice of this Order," to "serve upon Plaintiff a written report under oath providing . . . their identity and location, including contact information, their true name and physical address, and all associated e-mail addresses" [16] ¶ 2.

Pursuant to the expedited-discovery order, Amazon produced seller-account information for the Schedule A defendants, including Defendant No. 25 BJ's Choice (Amazon Seller ID A2U7IPV36SF4UK). The email address Amazon identified for Defendant was lsj680919@163.com. On October 23, 2025, Plaintiff served each defendant by electronic publication and by email to the marketplace-supplied email addresses, and filed the supporting Declaration of Service [19], [19-1]. Defendant's answer was due November 13, 2025. See [19].

On November 12, 2025 — twenty days after service, one day before its answer deadline, and three weeks before judgment — Wenzhu Yu of AnJie Broad Law Firm emailed Plaintiff's counsel on behalf of Defendant and confirmed that the storefront "BJ's Choice" and Amazon Seller ID A2U7IPV36SF4UK were her client's, identified her client's company ("Wuhan Tianlianfa E-Commerce Co., Ltd."), address, and supplier, disclosed her client's alleged net unit sales (1,433 units) and net profit (approximately $3,754.46 USD), and conveyed a monetary settlement offer. *See* Jiang Decl. ¶¶ 14–17; Vogt Decl. ¶¶ 5–7. Notably, these figures differed from Amazon's report of the BJ's Choice storefront, which reported that Defendant sold 1,633 infringing units for $23,785.53 in gross merchant volume. See Jiang Decl. ¶ 22 & Ex. A. BJ's Choice also did not file an appearance on the docket, did not answer, and did not comply with the Court's Order ([16] ¶ 2) to disclose its true name and physical address under oath. It elected to negotiate privately while remaining in default.

The Court entered the Final Default Judgment against the remaining defendants, including Defendant No. 25 BJ's Choice, on December 3, 2025. [28]. The judgment directed the release of frozen funds to Plaintiff within fourteen days. *See* [28] ¶ 6. Amazon subsequently released the funds it had restrained, including the $932.93 USD debited from the BJ's Choice account A2U7IPV36SF4UK. *See* Jiang Decl. ¶ 21.

The Seventh Circuit decided *Kangol* on May 29, 2026. On June 10, 2026, counsel for Defendant invoked that decision in writing after not having communicated with Plaintiff since March, asserting that service had been "entirely improper and deficient," offering not even half of its alleged net profit to resolve the case, and stating that if the offer was not accepted by June 15, 2026, it would "proceed with filing a motion to set aside the default judgment and dismiss the case for insufficient service of process and lack of personal jurisdiction." Three days after that deadline lapsed, the same defense counsel, Wenzhu Yu, who had written in October and November 2025, entered her appearance ([29]) and filed the present motion ([30]).

## ARGUMENT

### I. The Motion Failed to Present Any Evidence to Satisfy the Timeliness and Voidness Burdens; At Minimum, Limited Discovery Is Warranted on Those Burdens.

#### A. The movant bears the burden on timeliness and on voidness, and counsel's argument is not evidence of either.

A motion under Rule 60(b)(4) "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). In *Coney Island*, the Supreme Court held that this reasonable-time requirement applies to motions asserting that a judgment is void under Rule 60(b)(4), rejecting the contrary view that such motions may be brought at any time. 607 U.S. at 157. The reasonable-time requirement is a threshold the movant must satisfy; it is not a matter of the court's grace. *Id.*

The movant likewise bears the burden of demonstrating the jurisdictional defect on which a void-judgment motion depends. As the Seventh Circuit has held, "[i]f the defendant, after receiving notice, chooses to let the case go to a default judgment, the defendant must then shoulder the burden of proof when the defendant decides to contest jurisdiction in a postjudgment [R]ule 60(b)(4) motion." *Bally Export,* 804 F.2d at 401. That is this case precisely: Defendant received notice, retained counsel, and chose to let judgment enter.

The standard that governs review of a voidness ruling is less deferential, and "no court has the discretion to refuse to vacate [a] judgment once it recognizes its lack of jurisdiction." *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 854–55 (7th Cir. 2011). However, those principles govern what a court must do once a jurisdictional defect has been established; they say nothing about who must establish it. Whether a court has personal jurisdiction is a legal question reviewed de novo, but the facts are reviewed for clear error. *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 911 (7th Cir. 2015). Here, in entering the Final Default Judgment, the Court found that BJ's Choice "directly target[ed] [its] business activities toward consumers in the United States, including Illinois," and that Plaintiff had "properly completed service of process." [28] at 1–2. Those findings are in place. BJ's Choice does not engage them, does not mention them, and offers nothing that would unsettle them: no declaration, no registry record, no business license, no contemporaneous capture of the page on which its entire theory depends.

A motion must "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1)(B). On a fact-dependent motion that asks the Court to undo a final judgment, attorney argument unsupported by any declaration or exhibit does not carry the movant's burden.

B. <u>The Motion contains no evidence on either question it presents.</u>

The Motion is deficient under Rule 7(b)(1)(B), and lacks evidence sufficient to carry the movant's burden under Rules 60(b)(4) and 60(c)(1). Signed by counsel alone, it offers no declaration from BJ's Choice or its principal, whom the Motion never names, and none from any records custodian or corporate witness. It also carries no business license, no PRC State Administration for Market Regulation registry extract, no Unified Social Credit Code printout, and no document authenticating the storefront name or address it recites. Nor does it include a contemporaneous capture of the storefront for October 2025, the period relevant to Plaintiff's

diligence and to the Motion's "publicly displayed" assertion, and fails to account for when Defendant learned of this suit, when it retained counsel for this matter, or what it did during the seven months after judgment. Every one of those is a fact within Defendant's exclusive knowledge, and several bear directly on the reasonable-time inquiry the Motion must satisfy. Defendant has put none of them before the Court. The Motion therefore fails on the burden alone, and the Court need not weigh Plaintiff's evidence or resolve any dispute to deny it. *Coney Island*, 607 U.S. at 157; *Bally Export*, 804 F.2d at 401.

C. <u>The face of the record establishes untimeliness.</u>

*Coney Island* holds that Rule 60(c)(1)'s reasonable-time requirement applies to a motion asserting that a judgment is void under Rule 60(b)(4). 607 U.S. at 157. The movant there had notice of the judgment and of the trustee's enforcement efforts by April 2016 but did not move to vacate until a marshal seized its funds in 2021. The Bankruptcy Court held that it had not moved within a reasonable time; the District Court and the Sixth Circuit affirmed, and the Supreme Court affirmed the rule those courts had applied. *Id.* at 157–58. The requirement is a threshold the movant must satisfy rather than a matter of the court's grace, though it fixes no outer limit. *Id.* at 160. *Kangol* read *Coney Island* to mean that "in the context of a default judgment, it might be reasonable for a defendant not to seek relief before learning about a plaintiff's attempted enforcement," and on that basis found the *Kangol* defendant timely because it moved no more than two months after *Kangol* collected against its Amazon account. *Kangol*, 177 F.4th at 797 (quoting *Coney Island*, 607 U.S. at 160).

BJ's Choice is on the wrong side of that line. It had actual, counseled notice of this lawsuit by November 12, 2025. See Jiang Decl. ¶¶ 14–17; Vogt Decl. ¶¶ 5–7. Judgment was entered December 3, 2025; Amazon released the restrained funds, including the $932.93 USD debited

from Defendant's account. See Jiang Decl. ¶ 21. Defendant filed its Motion on June 18, 2026, more than seven months after its documented notice, and more than six months after enforcement of the Court's judgment. That is the *Coney Island* pattern, not the *Kangol* one. The *Kangol* defendant moved no more than two months after enforcement; BJ's Choice, already counseled and already negotiating on the merits, waited more than three times as long and filed only after *Kangol* handed it an argument that did not exist when it defaulted.

D. <u>Defendant's counsel answered the service email itself, one day after service.</u>

BJ's Choice retained AnJie Broad Law Firm and, on October 24, 2025, replied directly to the service email itself, confirming that counsel had "just been retained to represent our client in this matter," and conveying an initial settlement offer. The November 12, 2025 email supplied the fuller disclosure. Either way, BJ's Choice had counseled, actual notice of this suit within a day of service, and more than five weeks before judgment. The Motion implies that BJ's Choice learned of this proceeding late and moved promptly once it did. The record refutes the implication.

That BJ's Choice was counseled and engaged before judgment, yet chose not to appear, answer, or comply with [16] ¶ 2, is not a point in its favor on timeliness. It confirms that BJ's Choice made a considered decision to remain in default while it pursued private settlement and that its present motion is the product of a later change in the law, not of late-arriving notice.

E. <u>In the alternative, the Court should defer ruling and authorize limited timeliness discovery.</u>

If the Court is not prepared to deny the Motion on the present record, the proper alternative course is to authorize limited discovery directed to the *Coney Island* facts BJ's Choice has withheld. Whether to allow discovery on a threshold question is committed to the district court's discretion. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000).

Plaintiff proposes discovery calibrated to the issue of timeliness and a single Rule 30(b)(6) deposition capped at two hours directed to when BJ's Choice first received notice of the suit, the freeze, the fund release, when it retained counsel, and what it did in the interval. Plaintiff would complete that discovery within thirty days and file a supplemental opposition within fourteen days thereafter. The proposed requests are appended to the Jiang Declaration as Exhibits I, J, and K. *See* Jiang Decl. ¶ 32. The scope reaches no merits issue, no trade secret, and no defense; it asks only "when did you know, and what did you do" — the questions BJ's Choice put in play by moving on timeliness while supplying no timeliness facts. To deny both relief and discovery would let a movant defeat the reasonable-time rule simply by saying nothing about its own conduct.

## II. If the Court reaches the merits, *Kangol's* Article 1 standard was satisfied as to BJ's Choice.

The burden point disposes of the service question as well: Defendant's assertions about what its storefront displayed in October 2025 are unsworn and unauthenticated, and the record burden runs against the movant. *Bally Export*, 804 F.2d at 401.

### A. <u>The *Kangol / NBA Properties* standard.</u>

The Hague Service Convention does not apply "where the address of the person to be served with the document is not known." Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters art. 1, Nov. 15, 1965, 20 U.S.T. 361, 362, T.I.A.S. No. 6638. *Kangol* observed that district courts handling Schedule A cases "typically require plaintiffs to make 'reasonably diligent efforts to ascertain and verify [the] defendant's mailing address' before deeming the defendant's address unknown." *Kangol*, 177 F.4th at 799 (quoting *NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021)). It described that practice; it did not adopt it as a holding, and it did not decide whether the plaintiff there had satisfied it. It reversed and remanded for the district

court to decide the question in the first instance. *Id.* at 799, 802. The word "individualized," on which the Motion rests its entire theory, appears nowhere in the opinion. The "verify" prong is distinct from "ascertain": finding a string on a web page is not the same as confirming that the string is an address that connects to the defendant in a usable, serviceable form.

B. What the storefront actually showed: a run-together pinyin string, an address in Chinese characters, and a country code.

Defendant's storefront, as reflected in the July 1, 2026 capture of that page in the record (Jiang Decl. ¶ 28, Ex. G) — which shows the same run-together pinyin business name and Tianshunyuan/430034 address the Motion recites as "prominently and publicly displayed" — displays three things: a business-name field reading "wuhantianlanfadianzishangwuyouxiangongsi"; an address in Chinese characters only; and a country code, "CN." It displays no business license, no Unified Social Credit Code, no registration date, no legal representative name, and no link to any government record. *Id.*

The storefront pinyin string returned no registered entity on Tianyancha or Qichacha — two of the three registries where a Chinese company's registration is confirmed — and the third, the PRC National Enterprise Credit Information Publicity System, rejected the query outright: it caps a Latin-character search at eighteen characters, and the string runs forty. No exact match was found on any platform, and none for any of four plausible Chinese-character reconstructions of it. Tellingly, the name Defendant's own counsel supplied on November 12, 2025 — 武汉天联发电子商务有限公司 — is not even correct: it returns only a fuzzy match to a differently spelled entity, 武汉天连发电子商务有限公司 (连, not 联), registered to a residential unit on 古田四路北区 (107 栋 1-3-1) that does not match the unit the storefront recites (1 单元 301 室). That entity can be reached only by accepting counsel's misspelling; a search of either address in the record — the

storefront's or Amazon's — returns nothing at all. *Kangol* asks whether Plaintiff made reasonably diligent efforts to ascertain and verify the address, measured as of service, not whether an entity can be run down in hindsight through a name the defendant itself misspelled. BJ's Choice, which attached no declaration, no registry extract, and no business license, and whose own counsel could not state the company's registered name, has not carried its burden to show the "easily verifiable" identification the Motion asserts. The 天顺园 location is, moreover, a large residential complex, not, on its face, a presumptively valid commercial seat under PRC business-registration norms absent 住改商 approval; the 光电蓝庭融汇 building cannot be located in public real-estate records at all. *See* Jiang Decl. ¶¶ 23–25 & Ex. F.

To use the pinyin string at all, an investigator would have had to guess the word boundaries, reverse-translate the syllables into Chinese characters, and then search. The guess is anything but obvious: as Part II.C shows, Defendant's own counsel guessed wrong. That is not a "verified" address; it is a string requiring a chain of inferences to become one, and the inferences confirmed on the record do not, in any event, terminate in a registered entity. The Romanized string maps to no single set of characters: each syllable corresponds to dozens of characters across the four tones, so the distinctive portion of the trade name resolves to thousands of possible character combinations using characters in ordinary use, and to hundreds of thousands across the comprehensive character set. *See* Jiang Decl. ¶¶ 17, 25. *Kangol's* open-air-market example is apt: a market-stall location may exist, but it cannot be verified to the defendant in a form the Convention's machinery can use. Defendant's contrary assertion that the address was "officially registered with government authorities and is easily verifiable" appears nowhere on the page, is supported by no business license, no registry extract, and no declaration, and is contradicted by the publicly available registries themselves. It is counsel's say-so, which is not evidence.

BJ's Choice goes further, representing that the recited address "is the official, registered address on Defendant's business license." But BJ's Choice did not attach that business license or any registry record to its Motion. The only image in the Motion is an undated screenshot of the storefront's "Detailed Seller Information" panel: not a business license, not a registry extract, and not a capture tied to October 2025, and it bears none of the indicia of a genuine PRC registration (no Unified Social Credit Code, no registration date, no legal-representative name). The license BJ's Choice says exists is the one document that, if produced, would have ended this inquiry. Its absence — alongside the null results on both commercial registries and the official publicity system's refusal of the query altogether (Jiang Decl. ¶¶ 23–25 & Ex. F) — confirms that "officially registered" is an assertion, not a fact.

C. Defendant's own counsel could not state the storefront name or address.

The most direct refutation of the Motion's "complete" and "easily verifiable" framing comes from BJ's Choice itself. On November 12, 2025, when asked in writing to identify the company that owns the storefront and its address, Wenzhu Yu gave answers that match neither the storefront nor Amazon's records:

- Company. Counsel said "Wuhan Tianlianfa E-Commerce Co., Ltd." The storefront pinyin reads wuhantianlanfa . . . . The syllable differs — lian (e.g., 联, "connect") versus lan (e.g., 蓝/兰, "blue/orchid") — and the characters are unrelated. The storefront string does not resolve to the name Defendant's own counsel attributed to it. See Jiang Decl. ¶¶ 10, 17, 25.
- Address. Counsel gave "Room 1-3-1, Building 107, Gutian 4th Road North District, Qiaokou District, Wuhan." Meanwhile, the Motion gives "Room 301, Unit 1, Building 107, Tianshunyuan Group 1, Xindun, Gutian Fourth Road, Qiaokou District, Wuhan,

Hubei, 430034." And Amazon's production listed a third address entirely — Building 11, Room 3402, Guangdian Lanting Ronghui, postal code 430000. See Jiang Decl. ¶¶ 8, 10–12. The three share a district and a street and agree on little else.

If the storefront's name and address were as readable and as authoritatively registered as Defendant says, its counsel writing three weeks before judgment would have stated them. She did not. And the name she did state, "Wuhan Tianlianfa E-Commerce Co., Ltd." (武汉天联发电子商务有限公司), is itself not findable on either of the two leading commercial registries, which return only a partial match differing from it by one character. See Jiang Decl. ¶¶ 23–25 & Ex. F. The record thus contains not one verified address for BJ's Choice but three competing ones, none authenticated by a business license or registry extract, and two competing company names — the storefront's and counsel's — neither of which the registries return. That is the opposite of the "easily verifiable" identification on which the Motion depends.

D. BJ's Choice ratified the "address unknown" conclusion by ignoring the Court's Order [16] ¶ 2.

The Court ordered each defendant, within fourteen days of receiving notice, to "serve upon Plaintiff a written report under oath providing . . . their true name and physical address." [16] ¶ 2. BJ's Choice received notice on October 23, 2025; its deadline was on or about November 6, 2025. It did not comply — not then, not when its counsel wrote on November 12, and not since.

Had Defendant's address been as "publicly displayed" and "easily verifiable" as the Motion claims, compliance would have cost it a single page. Its choice to withhold the disclosure the Court had ordered is irreconcilable with its present claim that the same information was sitting in plain view for Plaintiff to find. A defendant that defies a court order to state its own address cannot hold the plaintiff to a higher standard of diligence than it was willing to meet under direct command.

E. Service was reasonably calculated to apprise — and in fact apprised BJ's Choice.

Service by email and electronic publication satisfied due process. The Court so found when it entered judgment, in the language of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). See [28] at 1. The record bears that out twice over. Three co-defendants served the same way were dismissed. See [21]; [25]; [26]. And Defendant's own counsel wrote on the merits twenty days after service — proof that the email at lsj680919@163.com reached BJ's Choice, that BJ's Choice understood it, and that BJ's Choice retained counsel to respond. See Jiang Decl. ¶¶ 26–27; Vogt Decl. ¶ 10. Whatever else may be said of the diligence record, BJ's Choice cannot claim the service mechanism failed to apprise it. It plainly did.

## III. The relief BJ's Choice demands exceeds *Kangol*.

Even if the Court found a service defect, the remedy BJ's Choice seeks is broader than the Seventh Circuit's own disposition. *Kangol* did not vacate the judgment before it; it "reverse[d] . . . and remand[ed]" for the district court to decide whether the Convention applied, leaving open that the address was unknown after reasonable diligence and that email service was proper. *Kangol*, 177 F.4th at 799, 802. And on the very relief BJ's Choice now demands, *Kangol* held back: the court "d[id] not address [the] argument that [the defendant] may recover money transferred to [the plaintiff] in fulfillment of the judgment, because whether the judgment is void is yet to be determined." *Id.* at 802.

The Motion asks this Court to vacate the judgment and to "[o]rder the immediate release of any funds belonging to BJ's Choice frozen pursuant to the void judgment." The Motion thus seeks the clawback of funds already paid — the precise question *Kangol* declined to reach until

voidness is resolved. If the Court were to find a defect, the available remedies are narrower than the Motion's all-at-once demand: quash service and order re-service through the PRC Central Authority under Hague Article 5; or vacate while preserving any restraints pending re-litigation; or defer the recovery question to a separate motion on a developed record. BJ's Choice cites no authority for ordering the return of disbursed funds in the same order that finds the judgment void. *Kangol* is to the contrary.

## CONCLUSION

Rule 60(b)(4) asks whether this Court had the power to enter the judgment it entered. Rule 60(c)(1) asks whether BJ's Choice came to this Court within a reasonable time to say otherwise. BJ's Choice bears the burden on both and has offered evidence on neither. Plaintiff thus respectfully requests that the Court:

1. Deny the Motion [30] on the ground that BJ's Choice has not carried its burden as the Rule 60(b)(4) movant — it has supplied no evidence on the timeliness facts within its exclusive knowledge and no authentication of the storefront content on which its service theory depends;

2. Alternatively, defer ruling on the Motion and authorize Plaintiff to take the limited timeliness discovery described in Part I.E, with Plaintiff to file a supplemental opposition within fourteen days of its completion;

3. To the extent the Court reaches the merits, deny the Motion [30] because the *Kangol* / *NBA Properties* "ascertain and verify" standard was satisfied on what the storefront actually showed, because *Mullane* notice was satisfied by Defendant's October 24, 2025 counseled engagement, and because the relief BJ's Choice seeks exceeds *Kangol*'s own disposition; and

4. Grant such other and further relief as the Court deems just and proper.

DATED: September 21, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084/IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on September 21, 2026, with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys and parties of record.

*/s/ Keith A. Vogt*
Keith A. Vogt