IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID GEORGE MACLEAN,

Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

Defendants.

Case No. 1:25-cv-12319

Judge Jorge L. Alonso

Magistrate Judge Albert Berry, III

**DEFENDANT BJ'S CHOICE'S REPLY IN SUPPORT OF ITS MOTION TO SET ASIDE DEFAULT JUDGMENT**

Defendant No. 25, BJ's Choice ("Defendant"), respectfully replies in support of its motion under Rule 60(b)(4) to set aside the December 3, 2025 default judgment (ECF No. 28).

## INTRODUCTION

Plaintiff's opposition does not establish that the addresses associated with Defendant were unknown after reasonable investigation when Plaintiff sought electronic service. Its principal investigation exhibit expressly dates the searches to months after the application for electronic service, to June 20 and July 1, 2026. ECF No. 31-8 at 2.

The factual discrepancies emphasized in the opposition do not show that Defendant was unlocatable or unable to receive physical documents. The two Building 107 descriptions identify the same property. The Building 11 address is a separate operating location. The company identified in Plaintiff's own registry search is Defendant's operating company. The storefront's "tianlanfa" spelling is an input error that did not prevent delivery of Amazon's address-verification postcard. The accompanying client declaration, postcard, and shipping label dated

June 18, 2020 corroborate Defendant's identity and historical use of a deliverable address. Client Decl. ¶¶ 1–7 & Ex. A.

Defendant acknowledges actual notice of the action, the absence of the earlier sworn report required by ECF No. 16, and the obligation to explain the timing of its motion. Those issues warrant direct consideration. They do not establish treaty-compliant service or excuse the absence of a contemporaneous investigation. The Court should consider the client declaration and Exhibit A, find the motion timely on the completed factual record, and vacate the judgment as to BJ's Choice.

## <u>FACTS AND LEGAL ARGUMENT</u>

### I. The Hague Convention Applied When Plaintiff Sought Electronic Service.

The Hague Convention required Plaintiff to use a treaty-authorized method of service because Defendant's physical location was reasonably ascertainable in China. Plaintiff could invoke Article 1's unknown-address exception only after reasonably diligent efforts to ascertain and verify that location. The address evidence and the dates of Plaintiff's own searches defeat that exception here.

In *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co., Ltd.,* 177 F.4th 793, 799–802 (7th Cir. 2026), the Seventh Circuit held that the Hague Service Convention prohibits email service into China when the Convention applies, and remanded to determine applicability. Article 1 excludes a case when the recipient's address is unknown. Kangol described the district courts' reasonable-diligence inquiry and left its application to the district court on remand. Id. at 799, 802.

The dispute therefore turns on whether Article 1's unknown-address exception applies. An address is not unknown merely because a map search fails to associate a business name with a building. Reasonable diligence requires meaningful steps, before seeking electronic service, to

verify the available address through reasonably accessible sources. Where a search identifies a physical location, the inquiry must address whether the defendant can be connected to it; generalized suspicion about online sellers does not suffice. See *Deckers Outdoor Corp. v. Litfun*, No. 25-cv-10080, ECF No. 102 at 7–10 (N.D. Ill. Sept. 14, 2026); *Deckers Outdoor Corp. v. A AO*, No. 25-cv-13065, ECF No. 69 at 11–14 (N.D. Ill. June 23, 2026).

Here, Plaintiff's own public-registry search returned Defendant's company with its correct Chinese name, Unified Social Credit Code, and Building 107 address. ECF No. 31-8 at 2; Jiang Decl. ¶ 24(c) (ECF No. 31-2). The client confirms that this registry entry identifies the company operating BJ's Choice and that the two Building 107 descriptions identify the same premises. Client Decl. ¶¶ 1, 3. The close correspondence between the romanized names, the registry address, and the storefront location warranted verification of that connection. A literal name mismatch or a map's failure to label the building with the company name did not establish that Defendant could not be located there. Yet Plaintiff's exhibit dates its searches to June and July 2026, after its October 2025 service application. ECF No. 31-8 at 2.

Plaintiff invokes *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir. 1986), under which a defendant that had notice and later challenges jurisdiction after default bears the burden of showing the absence of jurisdiction. Defendant meets that burden with affirmative evidence: the client identifies the registered company and both physical locations, explains the address variations, and confirms that both locations could receive mail in October 2025. Client Decl. ¶¶ 1–5. The 2020 postcard corroborates receipt at Building 107 under the same "TIANLANFA" spelling; Plaintiff's registry result independently identifies the company and registered address. Client Decl. ¶¶ 6–7 & Ex. A; ECF No. 31-8 at 2. This evidence of a verifiable location, considered with Plaintiff's express dating of its searches, establishes why the unknown-

address exception fails. The account records and counsel's November 12 correspondence provide additional links to Defendant, although those communications are distinct from the publicly accessible registry and storefront information. Jiang Decl. ¶¶ 4–6, 15; ECF No. 31-5 at 2. The motion separately challenges the adequacy of service. ECF No. 30 at 2–3.

## II. Plaintiff's Evidence Does Not Establish That Defendant's Address Was Unknown After Reasonable Diligence.

The application for electronic service was filed October 10, 2025. ECF Nos. 12–13; see ECF No. 30 at 1–2. Plaintiff's opposition relies on registry and mapping searches collected in Exhibit F. That exhibit states that the searches were performed on June 20, 2026, and recaptured on July 1, 2026. ECF No. 31-8 at 2. The separate storefront capture is dated July 1, 2026, and the Internet Archive query is dated June 19, 2026. Jiang Decl. ¶¶ 28–30. These dates follow Defendant's June 18 motion. They do not document steps taken before the October 2025 application or service.

Plaintiff's later searches cannot establish the reasonable diligence required before it sought electronic service. The relevant inquiry is what Plaintiff did to ascertain or verify this Defendant's address at that time. See *Litfun*, ECF No. 102 at 8–10; *A AO*, ECF No. 69 at 12–14. Here, the original application relied on generalized assertions that online sellers commonly provide false or unreliable addresses, while the opposition's verification exhibit identifies searches conducted only in June and July 2026. ECF No. 30 at 1–3 (quoting ECF No. 13); ECF No. 31-8 at 2. Later investigation may help establish whether an address is real, but it cannot show that Plaintiff pursued the available leads before obtaining permission to serve by email. Thus, the defect is not the absence of a particular label such as "individualized" in *Kangol*; it is the absence of evidence that Plaintiff undertook the required inquiry before invoking the unknown-address exception. Generalizations and post-application searches do not fill that gap.

### A. <u>Amazon's Policy Provides for Public Display of Seller Names and Business Addresses.</u>

Amazon's own policy made seller identity and address information a standard part of its public seller profiles. Its official announcement stated that, beginning September 1, 2020, business names and addresses would appear on Amazon.com Seller Profile pages, with rollout across "all U.S. Seller Profile pages" that week. The policy expressly covered both business and individual sellers and identified the displayed address as the business address supplied to Amazon.[1] Accordingly, checking the seller profile was an available, ordinary step in investigating the identity and location of an Amazon seller.

Amazon also reported that it verified sellers' addresses by sending a unique code to the supplied address.[2] Defendant's 2020 postcard and shipping label corroborate use of Building 107 in that process and actual receipt of physical mail. Client Decl. ¶¶ 6–7 & Ex. A at A-1–A-4. Plaintiff's July 2026 capture likewise displays Defendant's romanized business name and Building 107 address under "Detailed Seller Information." ECF No. 31-9 at 2; Jiang Decl. ¶ 28. Read together, Amazon's general disclosure policy and these records support the inference that Defendant's identity and physical location were reasonably ascertainable when Plaintiff sought email service.

The absence of a Wayback Machine capture does not establish that Defendant's seller profile lacked an address in October 2025. Plaintiff's declarant expressly disclaims knowledge of what the page displayed then. Jiang Decl. ¶ 31. That archival gap must be evaluated alongside Amazon's announced policy of public disclosure, which preceded the service application by five years. It does not eliminate the seller profile as a source Plaintiff should have checked or

---

[1] Amazon, *Reminder Notice: Business Name and Address to Be Displayed on Seller Profile Page Starting September 1, 2020*, https://sellercentral.amazon.com/seller-forums/discussions/t/fa847525be5388c5e0bca067502d630d (last visited Oct. 15, 2026).
[2] Amazon, *Brand Protection Report 2020*, at 5, https://assets.aboutamazon.com/96/a0/90f229d54c8cba5072b2c4e021f7/amz-brand-report.pdf (last visited Oct. 15, 2026).

establish that Plaintiff reasonably investigated the available address information. The relevant question remains whether Plaintiff reasonably investigated and verified the available address information before seeking electronic service. See *Litfun*, ECF No. 102 at 8–10; *A AO*, ECF No. 69 at 12–14.

### B. <u>Plaintiff's Own Registry Search Identified Defendant's Operating Company.</u>

Defendant's legal Chinese name is 武汉天连发电子商务有限公司, rendered in English as Wuhan Tianlianfa E-Commerce Co., Ltd. Its Unified Social Credit Code is 91420104MA49GLLE5L. Client Decl. ¶ 1. Plaintiff's Exhibit F identifies that exact Chinese company name and credit code, together with the Building 107 address. ECF No. 31-8 at 2; Jiang Decl. ¶ 24(c). The client identifies that registry result as Defendant's company. Client Decl. ¶ 1. The result therefore cannot be dismissed as an unrelated entity merely because an earlier query used a different Chinese character.

Plaintiff incorrectly attributes the Chinese character 联 to defense counsel. The November 12, 2025 email gave the English name "Wuhan Tianlianfa E-Commerce Co., Ltd." ECF No. 31-5 at 2. It did not give the Chinese character 联. Id. That character appears in Plaintiff's reconstruction, which the opposition then attributes to defense counsel. Jiang Decl. ¶ 24(b)–(c). A Romanized name does not, by itself, select between 联 and 连. The difference between Plaintiff's selected character and the registry result is not evidence that counsel furnished a false Chinese name.

The storefront does contain a different error: "tianlanfa" rather than "tianlianfa." The client explains that this was a spelling error when the information was entered and that it remained uncorrected because the Company's Unified Social Credit Code was accurate and operations were unaffected. Client Decl. ¶ 2. The same spelling appears on Amazon's postcard,

which the client received at Building 107. Client Decl. ¶¶ 6–7 & Ex. A at A-1–A-3. The error may complicate a literal name search, but it does not establish that the physical address was false or undiscoverable. Likewise, the official registry's rejection of an overlength Latin-character query shows a search-format limitation, not the nonexistence of the company. ECF No. 31-8 at 2–3. No exhaustive search of every possible Chinese-character combination is necessary to evaluate the concrete registry result, matching credit code, and address evidence now before the Court.

### C. The Two Building 107 Addresses Identify the Same Premises, and Building 11 Is a Separate Operating Location.

The registered address uses the older property-record description, 古田四路北区 107 栋 1-3-1: Room 1-3-1, Building 107, Gutian Fourth Road North District. The address shown in the storefront uses the current local description, 古田四路新墩天顺园一组团 107 栋 1 单元 301 室: Room 301, Unit 1, Building 107, Xindun Tianshunyuan Group 1, Gutian Fourth Road. The Company is registered under the address wording on the older property certificate. Both descriptions retain Gutian Fourth Road and Building 107, and the client confirms that "1-3-1" and "Unit 1, Room 301" designate the same premises, used as the registered address and warehouse. Client Decl. ¶ 3. These variations did not prevent identification of the property or receipt of physical mail: the location could receive deliveries in October 2025, and the client had already received Amazon's 2020 verification postcard using the older wording. Client Decl. ¶¶ 5–7 & Ex. A at A-1–A-3. The opening motion's identification of the storefront address as the registered address therefore concerns the same physical location.

The Amazon production address identifies a second property: Room 3402, Unit 1, Building 11, Guangdian Lanting Ronghui, Gutian Fourth Road. Its correct Chinese name is 广电

兰亭荣荟, not Plaintiff's reconstruction 光电蓝庭融汇. Compare Client Decl. ¶ 4, with Jiang Decl. ¶¶ 5, 24(d). The client owns and uses that property for Company operations. Both properties were in use and capable of receiving mail and courier deliveries in October 2025. Client Decl. ¶¶ 4–5. There are thus two locations with different functions, rather than three unexplained and competing addresses.

This distinction also explains why a reverse-address search for the operating premises might not return the Company's registered address. A search using an incorrect Chinese rendering of a development's name is additionally a weak basis for declaring that development unlocatable. And the fact that a map depicts residential buildings does not establish that Defendant could not be located or receive documents there. Plaintiff's own maps identify the Tianshunyuan residential blocks; the declaration supplies the connection to the Company. ECF No. 31-8 at 2; Client Decl. ¶¶ 3–5.

### D. Amazon's Verification Postcard and Dated Shipping Label Corroborate Use of Building 107 in 2020.

In 2020, during the store's initial registration, Defendant supplied Amazon with the older Building 107 address and received Amazon's address-verification postcard there. Client Decl. ¶ 6. All three photographs—the two sides of the postcard and the shipping label—are collected in Exhibit A. Client Decl. ¶ 7 & Ex. A at A-1–A-3. The postcard identifies "GUTIAN 4TH ROAD NORTH DISTRICT," "BUILDING 107 ROOM 1-3-1," Qiaokou District, Wuhan City, Hubei Province 430034, China. It bears the "TIANLANFA" spelling and instructs the recipient to use a unique code to verify the seller-account address. Client Decl. Ex. A at A-1–A-2, A-4.

The shipping label bears the date "18 Jun 2020," the same Chinese recipient name, the "TIANLANFA" company-name spelling, and the same street, city, and postal code. Client Decl.

¶ 7 & Ex. A at A-3. The client confirms that the label belongs to the postcard shipment; the full Building 107 and room number appear on the postcard. This evidence supports use of the address in Amazon's registration process and actual receipt of physical mail there in 2020.

The contemporaneous disclosures further corroborate Defendant's physical locations. Amazon supplied a physical address before the October 23 email, and we supplied the registered Building 107 address before judgment. Jiang Decl. ¶¶ 4–6, 15; ECF No. 31-5 at 2. Those later disclosures further undermine a claim that the physical location remained inherently unverifiable.

## III. Actual Notice and the Missing Sworn Report Do Not Establish Valid Service or Consent to Jurisdiction.

Defendant does not dispute that the October 23 email reached it or that counsel responded on October 24. ECF No. 31-4 at 2; Jiang Decl. ¶ 13. The motion challenges the legal sufficiency of that method under Rule 4 and the Convention, rather than its effectiveness in communicating notice. Plaintiff's reliance on the response and on other defendants' settlements addresses notice; it does not supply a treaty-authorized method of serving BJ's Choice.

*Kangol* also rejected the contention that private settlement negotiations, without participation in merits litigation before the court, waived the service objection. 177 F.4th at 796–97. The conduct Plaintiff identifies here consists of correspondence, disclosure of business and sales information for negotiations, and proposed settlement terms. Its own declaration states that Defendant took no action on the docket between judgment and its appearance and motion on June 18, 2026. Vogt Decl. ¶¶ 8–9 (ECF No. 31-1). Negotiating the merits privately did not, without more, submit the dispute to the Court for decision.

Defendant acknowledges that it did not serve the report under oath required by ECF No. 16, ¶ 2 (quoted in ECF No. 31 at 13). The November 12 email was an ordinary communication, not that report. See ECF No. 31-5 at 2. The present client declaration provides evidence of

Defendant's identity and locations; it is not offered as proof of timely compliance with the earlier order. The omission does not change the dates of Plaintiff's searches or establish that the addresses were false. Plaintiff identifies no basis for treating that omission as retroactive authorization of a service method otherwise prohibited by the Convention. Any consequence of the disclosure omission should be considered separately from whether valid service supported the default judgment.

## IV. The Settlement Correspondence and Plaintiff's Failure to Respond Support the Motion's Timeliness.

Rule 60(c)(1)'s reasonable-time requirement applies to a Rule 60(b)(4) motion. *Coney Island Auto Parts Unlimited, Inc. v. Burton*, 607 U.S. 155, 158–62 (2026). Defendant does not contend that a voidness motion has no time limit or that filing within one year is automatically sufficient. The Court must assess the circumstances, including notice of enforcement and the explanation for the elapsed time. Id. at 160.

The record shows engagement with Plaintiff before and after judgment. Counsel first responded October 24, 2025 and supplied the company name and registered address November 12. ECF Nos. 31-4 at 2, 31-5 at 2. Defendant acknowledges that it knew of the account deduction by December 6 and the default judgment by mid-December 2025.

The correspondence filed by Plaintiff documents the unresolved dispute over whether the previously deducted funds would be credited toward the proposed settlement total. The February exchange reflects Plaintiff's insistence on an additional payment beyond the deducted funds. On March 11, Defendant asked Plaintiff to confirm whether it would maintain that position and stated that, if so, Defendant would proceed with its defense instead of settling on those terms. ECF No. 31-6 at 3–5.

After expressly requesting Plaintiff's position on March 11, Defendant awaited a response in good faith to determine whether the parties could resolve the dispute over crediting the previously deducted funds. Plaintiff left that request unanswered. The June 10 email expressly followed up on the prior email and stated that no response had been received. ECF No. 31-6 at 2–4. The interval thus reflected Defendant's effort to obtain Plaintiff's position on an unresolved settlement issue. In the June 10 follow-up, counsel invoked *Kangol* and set a June 15 deadline for acceptance, stating that Defendant would otherwise seek vacatur. Id. at 2. Defendant filed its motion on June 18, three days after that deadline. ECF No. 30.

Defendant asks the Court to assess the interval in light of its request for a definite response, Plaintiff's failure to answer, Defendant's good-faith effort to allow a negotiated resolution, and the filing shortly after the June 15 deadline. The communications are offered to explain conduct and timing, not to establish liability, damages, or an enforceable settlement. See Fed. R. Evid. 408(b). Defendant does not contend that settlement discussions automatically suspended Rule 60(c)(1), or that *Kangol*'s issuance by itself restarted the time to seek relief. It submits that these circumstances support a finding that the motion was filed within a reasonable time.

Defendant recognizes that *Kangol* involved a motion within two months of enforcement, while *Litfun* involved a shorter interval after judgment, no attempted enforcement, and prompt action after new counsel's retention. *Kangol*, 177 F.4th at 797; *Litfun*, ECF No. 102 at 3–4. Those cases do not automatically resolve timeliness here. They call for a reasoned assessment of the actual circumstances, rather than a categorical rule that the number of months alone defeats the motion.

## V. The Court Should Consider the Client Declaration and Exhibit A and Confine Further Discovery to Disputed Facts.

The opening motion expressly identified Rule 60(b)(4), the challenged judgment, the Convention issue, and the alleged absence of reasonable investigation. ECF No. 30 at 1–3. The client declaration and Exhibit A support that same ground and answer the opposition's specific assertions about names, addresses, and historical use. The March–June chronology relies on the correspondence already filed by Plaintiff.

The client declaration and Exhibit A directly address the factual challenges raised in Plaintiff's opposition. To the extent leave is required for their consideration, Defendant requests it. The Court should determine whether these materials and the existing correspondence resolve the relevant issues before authorizing Plaintiff's proposed discovery. If further discovery is necessary, it should be confined to unresolved facts material to this motion, remain proportional, and respect attorney-client privilege and work-product protection. See Fed. R. Civ. P. 26(b)(1), (3). Defendant should have an opportunity to respond to any supplemental opposition.

## VI. The Requested Relief Concerns This Judgment and Does Not Depend on an Immediate Repayment Ruling.

*Kangol* remanded because the applicability of the Convention had not been decided; it did not prohibit a district court from vacating a judgment once that predicate is resolved. 177 F.4th at 802. *Litfun* did precisely that. ECF No. 102 at 14. Here, Defendant asks this Court to decide the predicate on the evidence and vacate ECF No. 28 as to BJ's Choice.

The opposition also conflates release of funds still restrained with repayment of funds already transferred. The motion requests release of any funds frozen pursuant to the challenged judgment. ECF No. 30 at 3. That request does not require the Court to order immediate repayment of the $932.93 already deducted. Jiang Decl. ¶ 21; ECF No. 31-7 at 2. Defendant

requests termination of restraints resting solely on the vacated judgment, to the extent any remain, and reserves any request for restitution of transferred funds for an appropriate application on a developed record. Any proposed continuation of restraints would require its own legal basis; it should not follow automatically from a judgment found void.

**CONCLUSION**

Defendant respectfully requests that the Court consider the client declaration and Exhibit A; find the motion timely under Rule 60(c)(1); vacate the December 3, 2025 default judgment, ECF No. 28, as to BJ's Choice under Rule 60(b)(4); and terminate any restraints maintained solely under that judgment. Alternatively, Defendant requests a limited opportunity to develop any material disputed facts, with a schedule allowing both parties to address the resulting record before disposition. Defendant does not seek a ruling on the merits of Plaintiff's copyright claim through this motion.

Dated: October 15, 2026

Respectfully submitted,
*/s/ Wenzhu Yu*

Wenzhu Yu
ANJIE BROAD LAW FIRM
14F, North Tower, Beijing Kerry Centre
No. 1 Guanghua Road, Chaoyang District, Beijing 100020, China
Telephone: +86 10 8567 5976
Email: wency_yu@anjielaw.com

**Attorney for Defendant BJ's Choice**

**CERTIFICATE OF SERVICE**

I certify that on October 15, 2026, I caused the foregoing document, client declaration, and Exhibit A to be filed with the Clerk of Court using the Court's CM/ECF system, which will send notice of electronic filing to counsel of record.

*/s/ Wenzhu Yu*

Wenzhu Yu